IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRAVON HARRIS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-21-1380 |
| STATE OF MARYLAND, *et al.*, | * | |
| Defendants. | * | |

***

# MEMORANDUM OPINION

Plaintiff Travon Harris, who is representing himself in this suit, brings this civil action pursuant to 42 U.S.C. § 1983 against the Baltimore County Detention Center ("BCDC"), BCDC Director Gail Watts, Sgt. Charles Carter, Sgt. Eric Strawderman, Officer Jackson, and Capt. Addy Chaddick (collectively, the "County Defendants"); PrimeCare Medical, Inc. ("PrimeCare"), Noel Stevens, and Tyronnia Jones (collectively, "the Medical Defendants"); and the State of Maryland.[1] ECF No. 1. Plaintiff alleges that the County Defendants assigned him to a top bunk although he had a bottom bunk order, and that he was injured as a result. *Id.* at 4-5. He also claims that subsequently, the Medical Defendants failed to provide adequate treatment. *Id.* Plaintiff seeks monetary damages and injunctive relief, *id.* at 6, and he has filed a Motion for Appointment of Counsel, ECF No. 24.

On October 26, 2021, the Medical Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 25), which they moved to seal (ECF No. 26). On November 19, 2021, the County Defendants similarly filed a Motion to Dismiss, or in the

---

[1] The Clerk shall be directed to amend the docket to reflect the full and correct names of Defendants.

Alternative, Motion for Summary Judgment.[2]  ECF No. 32.  Plaintiff opposed Defendants' Motions.  ECF No. 25.

A hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the following reasons, Defendants' dispositive motions, construed as ones for summary judgment, will be granted.  The Medical Defendants' unopposed Motion to Seal shall also be granted.  The State of Maryland, which was not served, and which has not waived its immunity under the Eleventh Amendment to suit in federal court, *see Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), shall be dismissed.  As the case is not proceeding, Plaintiff's Motion for Appointment of Counsel (ECF No. 24) shall be denied.

## Background

Plaintiff alleges that on April 16, 2021, he was moved from cell 4V to 4B at BCDC and assigned to the top bunk.  Compl., ECF No. 1 at 4.  Plaintiff informed Sgt. Carter and Officer Jackson that he "had bad legs" and could not climb the bunk, but Sgt. Carter said there was "nothing in the system."  *Id.*  To avoid being written up, Plaintiff went to his assigned cell.  *Id.*

Within the next day, Plaintiff fell while trying to climb to the top bunk.  *Id.*  Because the bunk had no ladder, Plaintiff "tried to use the toilet" as a step, slipped, and fell, hitting his back, leg, and head.  *Id.*  After his cellmate called for help, officers and nurses responded.  *Id.* at 4-5.  Plaintiff alleges that CRNP Stevens, who used ammonia to bring Plaintiff back to consciousness, was "very rough and rude."  *Id.* at 5.  Plaintiff recalls telling Stevens and Sgt. Strawderman that he defecated on himself, but Stevens only "pushed on different parts of [his] body" and left him on the floor, saying he would be fine until the morning.  *Id.*  Plaintiff alleges that he remained on

---

[2] Three days after the County Defendants filed their Motion, the Court received Plaintiff's Motion to Compel the County Defendants' Response, dated November 17, 2021.  ECF No. 34.  As Plaintiff has since been served with the County Defendants' Motion, his Motion to Compel shall be denied as moot.

the floor until 5 a.m., at which time his cellmate helped him up and he waited for breakfast and a shower. *Id.*

Plaintiff alleges that after he reported the incident, Sgt. Chaddick and PrimeCare Administrator Jones investigated the matter "but wrote false reports." *Id.* Specifically, Sgt. Chaddick incorrectly stated that Plaintiff was never assigned to the top bunk and that he was allowed to take a shower and change into a new uniform. *Id.* In addition, Administrator Jones stated that Plaintiff's subsequent x-ray revealed no abnormalities, thus contradicting the fact that Plaintiff has a current prescription for pain medication and a bottom bunk. *Id.*

According to the Medical Defendants, CRNP Stevens responded to Plaintiff's cell at approximately 1:16 a.m. on April 16, 2021, after Plaintiff reported that he fell. Medical Records, ECF No. 25-2 at 5. Stevens checked Plaintiff's vitals, put ammonia under his nose, and performed a head-to-toe assessment. Affidavit of Stevens, ECF No. 25-1 at ¶5; *id.* Stevens found that Plaintiff's jumper was dry and did not notice any fecal matter, and Plaintiff did not tell Stevens that he had soiled himself. ECF No. 25-1 at ¶6. Following an examination, Stevens diagnosed Plaintiff with dorsalgia (back pain) due to a fall and ordered x-rays and ibuprofen. ECF No. 25-2 at 5. Stevens also advised correctional staff to assign Plaintiff to a bottom bunk, as well as restrict him from going to the gym or working. *Id.* Plaintiff's x-rays, which came back the following day, were negative for acute findings. *Id.* The medical staff noted in his chart that Plaintiff cited a knee injury and asserted that he should have been on a bottom bunk, but Plaintiff had "been at the facility since 10/23/2020 with no mention of this." *Id.* On May 3, 2021, it was also noted that Plaintiff "was put on the bottom tier by the MD 4/19 to help manage his pain [but] is now requesting to be moved from lower tier." *Id.* at 3.

According to the County Defendants, Sgt. Strawderman responded to Plaintiff's cell after Plaintiff fell and placed a blanket under Plaintiff's head. Affidavit of Strawderman, ECF No. 32-5 at 2. CRNP Stevens soon arrived and evaluated Plaintiff. *Id.* During that time, Plaintiff's cellmate stated that Plaintiff had defecated on himself; however, Sgt. Strawderman did not smell any bowel movements, and Stevens noted that Plaintiff's jumper was dry. *Id.* Nonetheless, Sgt. Strawderman gave Plaintiff a new uniform and advised patrol officers to allow him to shower. *Id.* at 3. At the time of the incident, Plaintiff was assigned to the lower bunk and his cellmate was assigned to the upper bunk. *Id.*

## Standard of Review

Complaints raised by pro se litigants are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must raise factual allegations that are "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment motions are granted when the moving party shows that there is no genuine issue of material fact, therefore entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The district court must

view facts in the light most favorable to the nonmoving party, including drawing all "justifiable inferences" in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Material" facts "might affect the outcome of the suit under the governing law," and they constitute genuine issues if there is sufficient evidence for the trier of fact to rule in favor of the nonmoving party. *Id*. at 248.

## Analysis

### I. BCDC

As a preliminary matter, BCDC is not a "person" subject to suit under 42 U.S.C. § 1983. Section 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cnty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit").

Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person. Clearly, BCDC is not a person within the meaning of the statute. Therefore, Plaintiff's claims

against it cannot stand. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, et al., Fed. Prac. & Proc. § 1230 (2002).

## II. Deliberate Indifference

At the time of the incident giving rise to this case, Plaintiff was a pretrial detainee in Baltimore County, Maryland. Accordingly, his claims are analyzed under the Fourteenth Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992). "The constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F. Supp. 3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Of relevance here, in order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young*, 238 F.3d at 575-76 ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential

to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.*; *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."). Moreover, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106).

An inmate's mere disagreement with medical providers as to the proper course of treatment also does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial risk of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511

U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98.  But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury."  *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Here, Plaintiff claims that Defendants Carter and Jackson were deliberately indifferent to his serious medical needs when they assigned him to a top bunk; Defendants Strawderman and Stevens were deliberately indifferent when they allegedly left him laying in his own excrement; and Defendants Chaddick and Jones were deliberately indifferent in finding no fault on the part of the other Defendants.  There is nothing in the record, however, to show that Sgt. Carter and Officer Jackson assigned Plaintiff to a top bunk.  Rather, it was noted in Plaintiff's medical records that he had been at BCDC for six months with no mention of a knee or leg injury.  As such, Plaintiff has not shown either that he was exposed to a substantial risk of serious harm or that the prison officials knew of and disregard that risk.

Similarly, with regard to Plaintiff's claims against Sgt. Strawderman and CRNP Stevens, he has not shown that either Defendant knew he defecated on himself after he fell.  Although Sgt. Strawderman acknowledges that Plaintiff's cellmate informed them of such, Stevens noted in the medical records that Plaintiff's uniform was dry, and Sgt. Strawderman stated that he did not smell anything.  Nonetheless, even if Plaintiff did, in fact, soil himself, he has not shown how Defendants' actions exposed him to a substantial risk of serious harm.  CRNP Stevens evaluated Plaintiff's injuries, ordered x-rays and medication, and requested that Plaintiff be assigned a bottom bunk, while Sgt. Strawderman provided a new uniform and allowed Plaintiff to shower. In light of the foregoing, Plaintiff has failed to establish that these Defendants were deliberately indifferent.

With regard to Sgt. Chaddick and PrimeCare Administrator Jones, Plaintiff has marshalled no evidence to support his unverified assertion that both Defendants falsified their reports regarding the incident. *Cf. Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (explaining that "a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes"); *see also* Fed. R. Civ. P. 56(c)(1)(A). Meanwhile, Defendants have presented exhibits and affidavits to show that Plaintiff had not been assigned to a top bunk, was evaluated for injuries following his fall, and was given a new uniform and provided the opportunity to shower. There is no merit to Plaintiff's assertion that the reports were falsified simply because he was prescribed pain medication despite negative x-ray results. Rather, it appears that Plaintiff was given ibuprofen as a precaution in response to his complaints of pain.

On this record, Plaintiff fails to demonstrate that the actions of the County and Medical Defendants amounted to deliberate indifference. Therefore, Defendants' dispositive motions, construed as ones for summary judgment, shall be granted.[3]

### III. Respondeat Superior

As to Defendants Watts and PrimeCare, Plaintiff does not attribute any specific actions or inactions on their parts that resulted in a constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation). To the extent Plaintiff intends to sue them in their capacity as supervisors, he cannot succeed.

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no

---

[3] To the extent that Plaintiff's Complaint raises state law claims of medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and thus will dismiss such claims without prejudice. *See* 28 U.S.C. § 1367(c)(3).

respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Plaintiff has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Watts's and PrimeCare's employees. As discussed above, Plaintiff failed to show that his constitutional rights were violated. Accordingly, he has necessarily failed to demonstrate that Watts and PrimeCare authorized or were indifferent to any violation. Plaintiff's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse."). Therefore, Watts and PrimeCare are entitled to summary judgment.

**Conclusion**

Plaintiff's claims against the State of Maryland shall be dismissed. The County and Medical Defendants' Motions to Dismiss, or in the Alternative, Motion for Summary Judgment, construed as motions for summary judgment, will be granted. The Medical Defendants' Motion to Seal shall also be granted. Plaintiff's Motion for Appointment of Counsel shall be denied, and his Motion to Compel the County Defendants' Response shall be denied as moot.

A separate Order follows.


_September 9, 2022_          ___/S/_____
Date                                     Paul W. Grimm
                                            United States District Judge